IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF OHIO
WESTERN DIVISION

Tobbi D. Bollenbacher,   Case No. 3:06CV1383

      Plaintiff

v.   ORDER

Commissioner of Social Security,

      Defendant


This is a social security disability insurance benefits [DIB] arising under the Social Security Act, 42 U.S.C. §§ 416(i) and 423(d). Plaintiff Tobbi D. Bollenbacher seeks further judicial review of defendant Social Security Commissioner's [Commissioner] decision denying her claim.

Following plaintiff's first judicial appeal, I adopted the Magistrate Judge's Report and Recommendation [Report I] and affirmed the Commissioner's decision. Plaintiff subsequently filed a timely motion under Fed. R. Civ. P. 59(e) to alter or amend judgment, [Doc. 18], which I referred to the United States Magistrate Judge for a Report and Recommendation. Bollenbacher now objects to the Magistrate's Report and Recommendation [Report II] which recommends that I deny

plaintiff's motion and affirm the Commissioner's decision. [Doc. 24]. Jurisdiction is proper under 28 U.S.C. § 1331 and 42 U.S.C. § 405(g).

For the following reasons, Report II shall be adopted and the Commissioner's decision shall be affirmed.

## Background

### Procedural History

Plaintiff filed an application for Supplemental Security Income [SSI] on December 14, 2002 which the Administration denied both initially and on reconsideration. Administrative Law Judge [ALJ] Douglass L. Custis conducted an administrative hearing on June 20, 2005, and denied plaintiff's application for SSI on September 15, 2005. The Appeals Council then denied plaintiff's request for review, thereby rendering the ALJ's decision as the final judgment of the Commissioner.

Plaintiff then filed a request for judicial review. After the Magistrate Judge issued Report I on July 5, 2007, affirming the ALJ's decision, I adopted the Magistrate's report and closed the case. Plaintiff then filed a timely Rule 59(e) motion to alter or amend. On May 8, 2008, the Magistrate issued Report II, denying plaintiff's motion.

### Bollenbacher's Medical History

Plaintiff has exhibited both physical and mental ailments. On May 21, 2003, Darlene J. Barnes, Ph.D., an independent examining psychologist, diagnosed Bollenbacher with a depressive disorder. Dr. Barnes determined plaintiff's intellectual capabilities and overall memory index to be below average. She found that plaintiff had moderate impairments in her ability to maintain attention, concentration and function. Dr. Barnes also noted that plaintiff could only work on a part-time basis.

In July, 2003, Dr. Bruce J. Goldsmith agreed that plaintiff had a depressive disorder and a deficit in her intellectual functioning. He found that plaintiff had mild limitations in her daily activities and moderate limitations in her ability to carry out detailed instructions, maintain concentration and complete a normal work-week.

On September 13, 2003, Dr. Nicholas M. Pachuda,[1] plaintiff's treating physician for tendinitis, tendonosis and arthritis, noted her limitations. Plaintiff could occasionally lift or carry up to fifty pounds, frequently carry up to twenty-five pounds, and stand and sit for six hours in an eight hour workday. In November, 2003, Dr. Pachuda found that "sitting employment" was possible for plaintiff. [R. 374].

## Bollenbacher's Hearing Before the ALJ

Vocational expert [VE] Barbara Burk testified at the administrative hearing held on June 20, 2005. The VE classified plaintiff's prior work experience in housekeeping as heavy, unskilled labor as performed. Plaintiff's former job in daycare was performed at the medium level, although the job itself was characterized as light work. The VE testified that assuming an individual of plaintiff's age, education, exertional capacity, respiratory and psychological implications, such individual would be unable to perform work as a housekeeper or daycare worker; however, such individual could perform assembler jobs.

In fact, the VE found two jobs that would accommodate an individual with plaintiff's limitations. Namely, plaintiff could perform work as an electrical accessories' assembler [Dictionary of Occupational Titles [DOT] 729.687-010] and a final assembler [DOT 713.687-018]. The VE

---

[1] In the record, this physician's name has been spelled both Pauchda and Pachuda.

estimated that 800 such jobs exist regionally, 4,000 in the State of Ohio and 40,000 in the United States.

The VE characterized the positions of electrical accessories' assembler and a final assembler as repetitive jobs, requiring ordinary levels of concentration and attention. Although someone with difficulty retaining and recalling routine tasks "may" need assistance from a job coach as an "initial introduction to the job," the VE refused to rule out these two jobs. [R. 47]. The VE opined that if the person were limited to part-time work, assembler jobs could be performed on an accommodated basis.

## ALJ Determinations

The ALJ assigned "great weight" to the opinions of Drs. Pachuda and Barnes, but also gave "consideration" to other medical sources. [R. 23]. After considering the entire record, the ALJ made the following findings about plaintiff's residual functional capacity [RFC]: [R. 27].

> Plaintiff had the residual functional capacity to lift and/or carry ten pounds occasionally, and less than that frequently, she was unable to push/pull, climb or balance. She could stand and/or walk for less than one hour in an eight-hour workday, sit for eight hours in an eight-hour workday, perform fine and gross manipulations frequently, reach and operate a motor vehicle frequently. Plaintiff could bend or work around hazardous machinery on rare occasions, but she was required to work in a clean air environment, avoid concentrated exposure to temperature extremes and wetness/humidity. She had a fair ability to relate to others, to follow instructions, to perform repetitive tasks and deal with normal work stressors.

The ALJ ultimately determined that "claimant was not under a 'disability' as defined in the Social Security Act." [R. 27].

4

**Standard of Review**

A motion to amend or alter judgment under the Federal Rules of Civil Procedure 59(e) calls for the court to reconsider its decision after the entry of final judgment. Fed. R. Civ. P. 59(e); *Pechatsko v. Commissioner of Social Security*, 369 F.Supp.2d 909, 911 (N.D. Ohio 2004). The motion is not a substitute for appeal and does not allow the unhappy litigant to reargue the case. *Pechatsko, supra*, 369 F.Supp.2d at 911.

Only three situations justify altering or amending a judgment under Rule 59(e): 1) newly discovered evidence; 2) intervening change in controlling law; or 3) need to correct clear legal error to prevent manifest injustice. *Intera Corp. v. Henderson*, 428 F.3d 605, 620 (6th Cir. 2005). The district court has great discretion in deciding whether to grant relief under Rule 59(e). *Id*. at 619-20.

**Discussion**

Plaintiff alleges five errors of law. She first claims that the ALJ violated Sixth Circuit precedent by rejecting part of Dr. Barnes' findings without explanation and that I erred by failing to correct this violation. Second, plaintiff argues that my opinion improperly applied the substantial-evidence standard of review instead of the Sixth Circuit's automatic remand requirement for addressing key procedural violations. Third, Bollenbacher alleges that my judgment improperly re-weighed the psychologists' opinions in violation of the *Chenery* doctrine. Fourth, plaintiff argues that I erroneously referred to the grids as a basis for the ALJ's decision. Finally, plaintiff asserts that my opinion avoided stating whether *Crisp*, a case which allows the ALJ to disregard physicians' legal conclusions, applies in her situation.

### 1. *Hickman* and *Shepherd* Violations

Plaintiff first asserts that the ALJ failed to follow Sixth Circuit precedent when he adopted part of Dr. Barnes' medical conclusions and disregarded the rest without providing an explanation; plaintiff further asserts that my failure to correct the ALJ's mistake resulted in a clear legal error. *Shepherd v. Secretary of Health and Human Services*,758 F.2d 196, 197 (6th Cir. 1985); *Hickman v. Secretary of Heath and Human Services,* 1990 WL 14628, *6 (6th Cir.) (unpublished disposition).

In *Shepherd, supra,*758 F.2d at 197, the Sixth Circuit remanded plaintiff's social security determination back to the ALJ due to his failure "to articulate the basis for adopting the favorable part of [examining physician] Dr. Dill's assessment of plaintiff's condition and rejecting the unfavorable part." *Id.*; *Mullen v. Bowen,* 800 F.2d 535, 551 (6th Cir. 1986) (en banc); *Hickman, supra,*1990 WL 14628, at *6 ("The ALJ must articulate a basis for accepting one potion of a doctor's assessment and rejecting another.").

Bollenbacher's situation, however, differs from that in *Shepherd* or *Hickman*. Bollenbacher argues that the ALJ failed to articulate his reason for rejecting Dr. Barnes' conclusions that Bollenbacher: 1) experienced moderate impairments in her ability to maintain attention, concentration, persistence and pace; 2) had difficulties retaining and recalling information; and 3) would only be able to perform some part-time work. Dr. Barnes' first two statements are not inconsistent with the ALJ's findings and her third statement is a legal conclusion so deference is not required. *See Crisp v. Secretary of Health and Human Services,* 790 F.2d 450, 452 (6th Cir. 1986).

Dr. Barnes' first two conclusions find plaintiff to have moderate, not complete, impairments. When determining plaintiff's RFC, the ALJ found plaintiff to have a "fair ability" to "perform repetitive tasks." [R. 27]. Such conclusion is not inconsistent with Dr. Barnes' findings of moderate

6

impairments. As such, I conclude that plaintiff's assertion that the ALJ disregarded these two aspects of Dr. Barnes' report is flawed.

Dr. Barnes' third statement constitutes a legal conclusion and the ALJ need not defer to such conclusions. *See Crisp, supra,* 790 F.2d at 452. The Secretary retains the function of deciding whether an individual is under a disability. *Id.* A statement by a physician opining about an individual's status as disabled or ability to work is a conclusion about the ultimate issue and such statements "shall not be determinative of the question of whether or not an individual is under a disability." 20 C.F.R. 404.1526; *LeMaster v. Weinberger,* 533 F.2d 337, 340 (6th Cir. 1976); *see Crisp, supra,* 790 F.2d at 452 (affirming the ALJ's conclusion that physician's finding "that Crisp was not 'capable of engaging in any substantial work activity'" constituted a non-binding legal conclusion).

Dr. Barnes' stated that Bollenbacher would only be able to "perform some part time work on a limited basis." [R. 266]. Like the statements in *LeMaster*, this conclusion opines about the ultimate legal question at issue, a question explicitly reserved for the Secretary. Although a physician may state his or her opinion, the ALJ is not required to accept it. Given this, I conclude that the ALJ did not err by failing to adopt Dr. Barnes' legal conclusion or explain his reason.

## II. Substantial Evidence Standard

Plaintiff alleges that I erroneously applied the substantial-evidence test despite Sixth Circuit precedent requiring remand for violations of key procedural requirements. *See Wilson v. Commissioner of Social Security,* 378 F.3d 541, 544-46 (6th Cir. 2004) (requiring the ALJ to articulate "good reasons" for rejecting the opinion of a treating physician, regardless of whether substantial evidence supported his ultimate conclusion).

7

As discussed above in Section I, the ALJ did not "reject" Dr. Barnes' first two medical opinions, so he never triggered *Wilson*'s articulation requirement. Even if he did, however, *Wilson*'s articulation requirement does not apply to the opinions of non-treating physicians.

In post-*Wilson* decisions, the Sixth Circuit has found *Wilson* inapplicable where the medical source in question was not a treating source. *Kornecky v. Commissioner of Social Security*, 167 Fed. Appx. 496, 507 (6th Cir. 2006) (unpublished disposition) (holding that because doctor was not a treating medical source, "[t]he regulation at issue in *Wilson* simply does not apply"); *Daniels v. Commissioner of Social Security*., 152 Fed. Appx. 485, 490 (6th Cir. 2005) (unpublished disposition). Plaintiff cites *Rogers v. Commissioner of Social Security*, 486 F.3d 234, 242 -243 (6th Cir. 2007) to argue that the Sixth Circuit has extended *Wilson* "beyond the treating-physician." In *Rogers*, however, the Sixth Circuit extended an articulation requirement to credibility determinations, not to reject non-treating physicians. *Id.*

Dr. Barnes is an examining physician, but not a treating physician. [R. 23]. Given this, I conclude that even if the ALJ "rejected" Dr. Barnes' first two medical opinions, which I do not believe that he did, Dr. Barnes' failure to explain her reasoning falls outside of *Wilson*'s articulation requirement. Automatic remand for key procedural requirements, therefore, is not required and the usual harmless error standard applies.[2]

### III. Weight of Medical Evidence

---

[2] In *Kornecky, supra*, 167 Fed. Appx at 507, the Sixth Circuit held that without applying *Wilson*, there was no reason to depart from the usual harmless-error rule. "No principle of administrative law or common sense requires us to remand a case in quest of a perfect opinion unless there is reason to believe that remand might lead to a different result." *Id.* Remanding this case would not lead to a different result.

8

Third, plaintiff asserts that I violated the *Chenery* principle by transposing the weights assigned to the physicians by the ALJ. *SEC v. Chenery Corp.*, 332 U.S. 194, 196 (1947). The *Chenery* principle limits judicial review of the Commissioner's decision to the ALJ's rationale and findings and excludes any new rationale provided on appeal. *See NLRB v. Kentucky River Community Care, Inc.*, 532 U.S. 706, 715 (2001).

Plaintiff alleges that I allowed non-examining psychologist Dr. Goldsmith's opinion to serve as substantial evidence against three key limitations reported by Dr. Barnes. I disagree.

My opinion held that substantial evidence supported the ALJ's finding that plaintiff had a fair ability to relate to other people, follow instructions, perform repetitive tasks and deal with normal work stresses.[3] This is a logical conclusion without re-weighing evidence. As discussed above in Section I, however, Dr. Goldsmith's conclusions are not wholly inconsistent with Dr. Barnes' findings. Further, although the ALJ assigned "great weight" to Dr. Barnes' report, he also provided "consideration" to the other treating, examining and non-examining medical sources. In my judgment, I explained that the ALJ weighed Dr. Barnes' opinion along with others, but I did not re-weigh these opinions.

---

[3] Responding to plaintiff's contention that I improperly weighed medical evidence de novo, the Magistrate cited Rule 72 of the Federal Rules of Civil Procedure which requires that I determine de novo any part of the magistrate judge's disposition properly objected to. This Rule, however, is specific to my review of the Magistrate's determinations and does not apply to my review of the ALJ's findings. Plaintiff is correct that I do not have the right to review the ALJ's determinations de novo.

**IV. Reliance on the Grids**

Plaintiff claims that I improperly referred to the sedentary Medical-Vocational Guidelines ["grids"] as a basis for the ALJ's decision. It is unclear whether plaintiff is alleging that I mistakenly referred to the grids as the basis of the ALJ's decision or affirmed the ALJ's erroneous use of the grids.

If plaintiff is alleging the former, then this is not a clear error of law. In my opinion, I listed various elements that combined to establish sufficient evidence supporting the ALJ's decision. Even if I had, however, this would not be a clear error of law requiring remand.

Plaintiff is also mistaken if she is alleging the latter. ALJs use the grids during the fifth and final step of disability determinations. *Abbott v. Sullivan*, 905 F.2d 918, 923 (6th Cir. 1990). "After the ALJ determines that the plaintiff is incapable of performing past relevant work, he or she uses [the grids] to determine whether plaintiff can perform other jobs in the national economy." *Heston v. Commissioner of Social Security*, 245 F.3d 528, 536 (6th Cir. 2001).

If any individual suffers from both exertional and nonexertional impairments, the grids may only be used as a framework. *Abbott, supra,* 905 F.2d at 926-27. The ALJ must rely on other evidence to show that plaintiff can perform a significant number of jobs that exist in the national economy. 20 C.F.R. § 404.1567; *Burton v. Secretary of Health & Human Services*, 893 F.2d 821, 822 (6th Cir. 1990).

Contrary to Bollenbacher's argument, the ALJ properly used the grids. He first noted that the grids would direct a finding of "not disabled" if plaintiff were capable of performing the full range of sedentary work. Due to Bollenbacher's additional limitations, however, the ALJ based his decision on the testimony of an impartial VE who explained that Bollenbacher is capable of

10

performing the sedentary unskilled jobs of electrical accessories' assembler and final assembler. There are 800 of these two jobs locally, 4,000 in the State of Ohio and 40,000 nationally. Accordingly, my affirmation of the ALJ's application of the grids was not clearly erroneous.

### V. Application of *Crisp*

Plaintiff's fifth claim challenges my conclusion that the ALJ can disregard Dr. Barnes' legal conclusion that plaintiff was limited to part-time work. As explained above in Section I, Dr. Barnes' conclusion is similar to the legal conclusions discussed in *Crisp*. *Crisp, supra,* 790 F.2d at 45 (finding "capable of engaging in any substantial work activity" to be a legal conclusion reserved for the Secretary). The ALJ, therefore, did not need to defer to the physician's legal conclusion about the ultimate issue.

### Conclusion

For the foregoing reasons, it is hereby:

ORDERED THAT plaintiff Tobbi B. Bollenbacher's motion to amend or alter the court's previous judgment regarding her claim for social security benefits [Doc. 18] be, and the same hereby is denied.

So ordered.

                                               s/s James G. Carr
                                               Chief Judge